[Civ. No. 7740. First Appellate District, Division Two.—February 2, 1931.]

MELISSA BAILAR, Respondent, v. A. E. YEWELL et al., Appellants.

Hoye & Boehler for Appellants.

John A. Rush for Respondent.

STURTEVANT, J.—The plaintiff commenced an action against the defendants to impress a trust on a lot in Los Angeles County. The defendants A. E. Yewell and Alice K. Yewell answered. The defendant A. O'Connell did not an-

swer and her default was entered. The trial court made findings in favor of the plaintiff and from a judgment entered thereon the defendants have appealed. The defendants make several attacks on the findings, but all of those attacks are but different methods of presenting the contention that plaintiff's money did not go into that portion of the land called by the defendants the key lot. The record discloses that the plaintiff and the defendants had been friends for several decades. The plaintiff resided in the east. The defendant A. E. Yewell resides at Southgate in Los Angeles County and is engaged in the real estate business. In July, 1924, the plaintiff sent her draft in the sum of $900 to Mr. Yewell with directions to invest the same in real estate. Thereafter he made two executory purchases. Under one contract he undertook the purchase of the south 115 feet of the lands described in the complaint, and in the other contract he undertook the purchase of what he calls the key lot, the north 40 feet of said lands. He made his contracts with Clark and Wagner. They held an executory contract to purchase both lots, described as one, from Bessie Spring, who was the owner. At the trial it was admitted by the defendants that the plaintiff's money was received and was used in making payments under the first contract. However, it was the contention of the plaintiff that said moneys were used in making both purchases. The plaintiff contends that the total payments made aggregated exactly $900 and no more. The defendants claim that the payments aggregated $1242.64. If the contention of the plaintiff can be sustained by the evidence contained in the record, in support of the judgment of the trial court, we are bound to adopt her contention. The plaintiff called the defendant A. E. Yewell and under a searching examination the witness produced three checks which represented moneys paid out on the purchase of the lots. On the first contract he claimed that he paid down $50. On the second contract he claimed that he paid down $150. The latter sum was also evidenced by one of the checks just mentioned. He testified that he had no checks or receipts showing the disbursement of the $900 except payments indorsed on the back of the contracts, and the checks introduced in evidence. He testified that the most of the payments made by him were paid in cash and were indorsed on the executory contracts as the payments

were made. His two executory contracts hereinabove mentioned were both introduced in evidence. The executory contract from Bessie Spring to Clark and Wagner was also introduced in evidence. The latter contract shows that $900 was paid on that contract as for principal. It also shows that before the defendant entered into his executory contracts his vendors had paid $200. In passing it may be noted that $200 is also the sum of the two down payments which the defendant Yewell paid his vendors. After the defendant entered into his executory contracts he paid many of his payments to the owner as distinguished from his vendors. Defendant's first contract of purchase shows a down payment August 12, 1924, of $50, and January 8, 1925, a further payment of $125 or a total of $175. The second one shows a down payment August 23, 1924, of $150, a cash payment of $20, and there is a check payment on this contract of $75 which was paid to Wagner or a total of $245. The owner indorsed her contract January 1, 1925, showing taxes and interest paid to date and thereafter the defendant paid her, or her assigns, $480, being 20 payments each of $20 in cash and a balance of $80 by check. The grand total is $900 and no more. The summary, made by the defendant, $1242.64, contains many patent duplications and is clearly inaccurate.

That the defendant invested the plaintiff's money in lands in the particular block of land was an admitted fact. Whether such moneys were invested in the entire lot described in the complaint or only in the southerly 115 feet thereof was the sole issue. The plaintiff's proof showed a set of facts from which the trial court could infer that plaintiff's moneys were used in the purchase of the entire lot, not a part only thereof. We cannot, on this record, say it erred.

The summary of the defendants leads nowhere. It includes (1) moneys paid to the vendors of the defendants and (2) moneys paid to the owner. Some of these moneys went into the lot—not necessarily all. As stated above, it was stipulated that plaintiff's money went into at least a part of the land described in the complaint. The defendants' summary shows $50, the down payment, went into the southerly end of the lot, that is, was paid on the first contract. Then it shows that a check for $80 and cash pay-

ments $520 went into the purchase of the entire lot. How much went into the north end and how much went into the south end does not appear. Nor does it show what was done with the balance of plaintiff's money. Such facts do not dispute the stipulated fact, but are in accord therewith.

We have shown no more than $900 was paid by defendant in the purchase of the entire lot as described in the complaint. He made no claim that he used the plaintiff's money for any other purchase. To assume that he did is to impute to him the commission of a crime. But the law presumes that he committed no crime. It is therefore clear that the findings are supported by the evidence.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.